UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| JEREMY DEWAYNE HAWKINS | 21-84-SDD-SDJ |

### RULING

Before the Court is a Motion for New Trial[1] filed by Defendant Jeremy Dewayne Hawkins ("Defendant"). The Government filed an Opposition,[2] and Defendant filed a Reply.[3] For the reasons that follow, the Motion will be denied.

I. **BACKGROUND**

On August 24, 2023, following a three-day jury trial, Defendant was convicted of conspiracy to distribute and to possess with the intent to distribute cocaine and heroin, possession with the intent to distribute cocaine, and felon in possession of a firearm.[4] Current defense counsel enrolled in the place of trial counsel in December of 2023.[5] In May of 2024, Defendant filed an unopposed motion to continue sentencing, stating that he had "discovered new evidence and testimony that may cast doubt on the evidence of [Defendant's] guilt presented to jurors" and seeking time to review the trial transcript, which had not yet been completed.[6] The Court granted the motion and sentencing was continued without date.[7] Defendant now moves for a new trial, arguing that "[j]urors in this

---

[1] Rec. Doc. 128.
[2] Rec. Doc. 132.
[3] Rec. Doc. 135.
[4] Rec. Doc. 87.
[5] Rec. Doc. 104.
[6] Rec. Doc. 112.
[7] Rec. Doc. 113.

case heard a false, incomplete, and sanitized version of a corrupt narcotics divisions' extensive involvement in the investigation of [Defendant]."[8]

More specifically, Defendant argues that the Government intentionally concealed the involvement of two then-members of the Baton Rouge Police Department ("BRPD") in Defendant's investigation: Jason Acree and Jeremiah Ardoin. In the time between Defendant's investigation and trial, Acree and Ardoin were both charged for misconduct in their positions as officers in the BRPD Narcotics Division. Ardoin was charged with attempted illegal possession of stolen things.[9] In January of 2025, Acree pled guilty to two felony counts of malfeasance in office.[10]

Defendant argues that "the Government and its witnesses completely concealed or obfuscated Acree, Ardoin, and the Baton Rouge Narcotics Division's participation in this investigation."[11] Defendant claims he is entitled to a new trial under *Brady v. Maryland*.[12]

## II.    LAW AND ANALYSIS

Ordinarily, the Fifth Circuit applies the "*Berry* Rule" to motions for new trial under Federal Rule of Criminal Procedure 33 based on newly discovered evidence. Under the *Berry* Rule, a defendant must demonstrate: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to the defendant's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new

---

[8] Rec. Doc. 128-1, p. 2.
[9] Rec. Doc. 132-2.
[10] Rec. Doc. 128-16.
[11] Rec. Doc. 128-1, p. 7.
[12] *Brady v. Maryland*, 373 U.S. 83 (1963).

trial would probably produce an acquittal."[13] However, the Fifth Circuit applies the three-prong *Brady* test where, as here, a motion for new trial based on newly discovered evidence raises a *Brady* claim.[14] To establish a *Brady* violation, a defendant must show: (1) evidence was suppressed by the Government; (2) the suppressed evidence was favorable to the defense, either because it is exculpatory or impeaching; and (3) the suppressed evidence was material to either guilt or punishment.[15] The grant of a new trial is "an extreme measure," and "[a]lthough grant or denial of the motion is entrusted to the sound discretion of the judge, motions for new trial are not favored, and are granted only with great caution."[16]

In 2017, a search warrant was executed at Defendant's property located in Ethel, Louisiana (the "Ethel Property").[17] The DEA Report of Investigation in connection with this search reflects that "[s]everal items of drug and non drug evidence was seized along with several firearms."[18] The Report also states: "The search was conducted by SA Page Devall along with TFA's [Task Force Officers] Jason Dohm, Paul Marionneaux and Clint Boe, LSP [Louisiana State Police] Detectives Sgt. Matt Sinanan, Agent Jack Toney, East Feliciana Parish Sheriff's Office Detective Kevin Garig, BRPD Detectives Jeremiah Ardoin and Jason Acree."[19] The Report indicates that firearms and drugs were located in an

---

[13] *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011) (citing *United States v. Wall,* 389 F.3d 457, 467 (5th Cir. 2004); *Berry v. Georgia,* 10 Ga. 511 (1851)).
[14] *United States v. Runyan*, 290 F.3d 223, 247 (5th Cir. 2002) (citing *United States v. Gonzales,* 121 F.3d 928, 946 (5th Cir. 1997); *United States v. Conley,* 249 F.3d 38, 45 (1st Cir. 2001); *United States v. Quintanilla,* 193 F.3d 1139, 1149 n. 10 (10th Cir.1999)).
[15] *Runyan*, 290 F.3d at 247; *Strickler v. Greene*, 527 U.S. 263, 282 (1999).
[16] *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citing *State v. Ladabouche,* 146 Vt. 279, 502 A.2d 852, 856 (1985); *United States v. Hamilton,* 559 F.2d 1370, 1373 (5th Cir.1977)).
[17] Rec. Doc. 132-1.
[18] *Id.* at p. 1.
[19] *Id.*

"outbuilding" as well as the "main residence."[20] Additionally, the Report reflects that a bag containing approximately 150 grams of cocaine was found by DEA TFA Jason Dohm under the back seat of a gold Chevrolet pickup truck parked in the yard adjacent to the main residence.[21]

In support of this Motion, Defendant submits two affidavits by Ardoin. The first affidavit is dated May 23, 2024.[22] Ardoin testifies that he "clearly recall[s] [himself] and Jason Acree being two of the first officers on scene" during the execution of the search warrant at the Ethel Property, and he was present during the entire duration of the search.[23] Ardoin further testifies that he "do[es] not recall any officer reporting that drugs were found during the search of [Defendant's] property," and that "[n]ormally, when executing a warrant," an officer announces when illegal items are found.[24] He also states that he recalls being the first to search "one of [Defendant's] trucks" and found no narcotics, and he does not recall any officer, including TFA Dohm, say that they found narcotics in Defendant's truck during the search.[25] However, the Court notes that both parties acknowledge there was more than one truck on the property, and Ardoin does not confirm that he searched the same truck where TFA Dohm found the drugs. Further, Ardoin finds it "unusual" that there were no pictures of the drugs in the location they were purportedly found within Defendant's truck.[26] Additionally, while searching a bedroom of the Ethel Property with Acree, Ardoin states he "saw Acree begin to steal jewelry that he

---

[20] *Id.* at p. 2.
[21] *Id.* at p. 3.
[22] Rec. Doc. 128-4.
[23] *Id.* at ¶¶ 8–9.
[24] *Id.* at ¶ 10.
[25] *Id.* at ¶¶ 13–15.
[26] *Id.* at ¶ 17.

found in [Defendant's] residence."[27] Ardoin says he has seen Acree steal jewelry and drugs during other past searches, and also plant stolen drugs on individuals in the past.[28] To be clear, Ardoin does not indicate that Acree stole or planted any drugs in this case.

In Ardoin's second affidavit, dated June 8, 2025, he explains that since his first affidavit, he has reviewed the trial transcripts and discussed the trial with attorneys.[29] He notes that his and Acree's names were never mentioned in the trial transcripts as being part of the investigation, despite their heavy involvement.[30] Ardoin testifies that he and Acree "listened to all the wire tapped phone calls, helped transcribe the phone calls, and helped track [Defendant's] location on our computers through cell phone pings, among other tasks over the entire length of the investigation."[31] Ardoin says that "Acree was always high on drugs while at work, including on the day of the search."[32] Ardoin further states that "[i]t seems as if the role of BRPD was downplayed at trial."[33] Revisiting this point from his first affidavit, Ardoin testifies: "I searched the truck first, and no drugs were there. If drugs were found in the truck, photographs of those drugs inside the truck would have been taken."[34] The Government points out that it is unclear why Ardoin in his second affidavit claims to know that he searched "the truck" where TFA Dohm found the bag of cocaine, as opposed to one of the other trucks on the property.[35] Ardoin states that nobody

---

[27] *Id.* at ¶ 18.
[28] *Id.* at ¶¶ 19–21.
[29] Rec. Doc. 128-5, ¶ 3.
[30] *Id.* at ¶ 4.
[31] *Id.* at ¶ 5.
[32] *Id.* at ¶ 9.
[33] *Id.* at ¶ 10.
[34] *Id.* at ¶ 15.
[35] Rec. Doc. 132, p. 16.

from the U.S. Attorney's Office contacted him regarding his knowledge of what transpired during the search of the Ethel Property.[36]

In short, Defendant argues that the involvement of Acree and Ardoin in the investigation was concealed by the Government, and that this information could have been used at trial as exculpatory evidence or for purposes of impeachment. However, the Court finds that the Government did not suppress this evidence. The DEA Report on the execution of the search warrant at the Ethel Property conspicuously lists "BRPD Detectives Jeremiah Ardoin and Jason Acree" as having participated in conducting the search.[37] Further, line sheets from the T-III interceptions which were also produced to Defendant during discovery list Acree and Ardoin as having listened to and transcribed calls.[38] To establish a *Brady* claim, Defendant must show that the Government "suppressed favorable, material evidence that was not discoverable through due diligence."[39] In the words of the Fifth Circuit:

> *Brady* does not obligate the [Government] to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence. When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation. In this sense, *Brady* applies only to "the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense."[40]

Defendant argues that "Acree's name appearing in a report or a phone call line sheet would not have alerted [Defendant] to the knowledge of the pervasive and suffusing

---

[36] Rec. Doc. 128-5, ¶ 16.
[37] Rec. Doc. 132-1, p. 1.
[38] Rec. Doc. 132-3.
[39] *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Brady*, 373 U.S. at 87; *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir.1997)).
[40] *Id.* (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976)) (other internal citations omitted).

extent of Acree and Ardoin's involvement."[41] However, the fact remains that Defendant possessed the materials evidencing Acree and Ardoin's participation, and the Government did not suppress this information. The Government reasonably explains that it did not conduct interviews of Acree or Ardoin or call them to testify at trial because they did not seize or handle any of the relevant evidence.[42] Further, as the Government argues, Acree and Ardoin's subsequent charges for misconduct were public knowledge.[43] This point is supported by the several news articles about Acree and Ardoin that Defendant attaches to his Motion.[44]

Because the "new evidence" identified by Defendant was included in the materials produced during the discovery process, the Court finds that the Government did not suppress any evidence. Accordingly, the Court finds that no *Brady* violation has occurred. For this reason, the Court finds it unnecessary to address the favorability and materiality of the evidence.[45]

---

[41] Rec. Doc. 135, p. 7.
[42] Rec. Doc. 132, p. 10.
[43] *Id.* at pp. 11–12.
[44] *See* Rec. Docs. 128-3, 128-6, 128-9, 128-10, 128-12, 128-13, 128-14, 128-15.
[45] *See United States v. Villafranca*, 260 F.3d 374, 379 (5th Cir. 2001) (after finding no suppression of evidence occurred, concluding there was no *Brady* violation without addressing favorability or materiality).

### III. CONCLUSION

For the reasons provided, Defendant's Motion for New Trial[46] is DENIED.

Given the Court's Ruling on the Motion for New Trial, Defendant's Motion for Release Pending Motion for New Trial[47] is DENIED as moot.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 16th day of September, 2025.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[46] Rec. Doc. 128.
[47] Rec. Doc. 116.